JEAN-PAUL  CIARDULLO, CA Bar No. 284170
    jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071
Telephone:  213-972-4500
Facsimile:   213-486-0065

CYNTHIA J. RIGSBY (*pro hac vice forthcoming*)
    crigsby@foley.com
**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone:  414-297-5580
Facsimile:   414-297-4900

*Attorneys for Plaintiff*
*SmileDirectClub, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SmileDirectClub, LLC, <br><br>       *Plaintiff*, <br><br>   *vs*. <br><br> Donovan W. Berkely, <br><br>      *Defendant*. | Case No. 18-cv-1236 <br><br> **COMPLAINT for** <br><br> **(1) Violation of 15 U.S.C. § 1120** <br> **(2) Cancellation of Trademarks** <br> **(3) Violation of Cal. Bus. & Prof. Code Section 17000** *et seq.* <br><br> *Demand for Jury Trial* |

4825-2342-5899.7

SmileDirectClub, LLC ("Plaintiff") hereby complains and alleges as follows against Donovan W. Berkely's ("Defendant"):

## JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over Plaintiff's federal claims arising under the Lanham Trademark Act 15 U.S.C. § 1051 et. seq. (the "Lanham Act") pursuant to 15 U.S.C. §§1119, 1120, and 1121, and 28 U.S.C. §§ 1331, 1338(a). The Court has supplemental jurisdiction over the claims arising under laws of the State of California pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

2.      This Court has general personal jurisdiction over Defendant in that, at all times pertinent hereto, upon information and belief, Defendant has been domiciled in this District.   The Court also has specific jurisdiction over Defendant because, upon information and belief, Defendant has directed the acts that harmed Plaintiff from this District, and those acts have caused injury to Plaintiff nationwide, including in this District.

3.      Venue in this District is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district.

## PARTIES

4.      Plaintiff SmileDirectClub, LLC is a Limited Liability Company organized under the laws of the state of Tennessee, with its principal place of business located at 414 Union Street, Suite 800, Nashville, Tennessee 37219.

5.      Defendant Donovan Berkely is an individual who has transacted business in this District and, upon information and belief, resides in this District.   Specifically, USPTO records and other public records list Defendant's address as 6789 Quail Hill Parkway, Irvine, California 92603, and upon information and belief this is Mr. Berkely's current address.

COMPLAINT

4825-2342-5899.7

**PLAINTIFF SMILEDIRECTCLUB**

6.     Plaintiff is a famous, international, and pioneering direct-to-consumer provider of non-clinical administrative support services to duly licensed dentists and orthodontists trained in sequential aligner therapy.

7.     Plaintiff's brand has become famous and well-recognized throughout the United States, attracting a very large and expanding customer base.

8.     Plaintiff, under the name SmileCareClub, LLC, was formed and registered as a limited liability company with the State of Tennessee on or around July 16, 2014.

9.     Plaintiff operated under the name and trademark SmileCareClub until on or about June 2016 when it formally changed its name to SmileDirectClub, LLC.

10.     Since shortly after its inception, Plaintiff has offered and continues to offer licensed dentists, orthodontists, and dental practices access to its web-based teledentistry platform and a comprehensive package of related non-clinical business and administrative support services that permit those dentists to offer a more affordable option for orthodontic treatment of minor to mild cases of malocclusion with "invisible" corrective sequential aligners.  At the core of SMILEDIRECTCLUB's business model is its innovative web-based teledentistry platform, which is designed around the SmileCheck® system.  The SmileCheck® system is a proprietary system that connects patients with their treating dentist through a web-based portal.   Through the SmileCheck® system, a dentist is able to view images and dental impressions of his or her patients, review and develop treatment plans, prescribe treatment, track the performance of the case through retention, and document communications with patients. Likewise, a patient can access the SmileCheck® system to upload images, view their recommended treatment plan, keep apprised of developments in their treatment, and to communicate with their treating dentist.

11.     Commencing at least as early as August 2015, Plaintiff also has used the "SMILEDIRECTCLUB" mark continually nationwide in interstate commerce to identify

4825-2342-5899.7

its teledentistry platform and related dental support organization services, and to distinguish its services and products from the services and products offered by others.

12.     Plaintiff also has established, through continuous, long-term use in commerce common law rights in the use of the phrase "SMILEDIRECTCLUB" as a trade name or part of a trade name.

13.     Plaintiff owns all right, interest, and title to the "SMILEDIRECTCLUB" mark, including all goodwill associated therewith and the right to sue for past, present, and future infringement.

14.     As a result of the long and exclusive use by Plaintiff of its "SMILEDIRECTCLUB" mark, the large sales under the "SMILEDIRECTCLUB" mark, and the large amount of money spent for advertising and promotion of its goods and services, the "SMILEDIRECTCLUB" mark has become famous, and is widely recognized among the general consuming public of the United States as a designation of the source of origin for its services and goods. Plaintiff and its use of the "SMILEDIRECTCLUB" mark are well-known to the public generally.

15.     Plaintiffs fame and popularity have at all relevant times also been known to Defendant.

## DEFENDANT BERKELY

16.     Defendant has no affiliation with Plaintiff, and was unknown to Plaintiff until 2015.

17.     Upon information and belief, Defendant is not a dentist or orthodontist.

18.     Upon information and belief, Defendant either is or was a manager of a paintball business.

19.     Defendant owns several thousand domain names.

20.     Upon information and belief, Defendant seeks to make money by trying to compel legitimate businesses to pay him in exchange for his transfer to them of domain names that he does not legitimately use himself.

-4-

COMPLAINT

21.    Upon information and belief, Defendant has acted as a manager of a Southern California-based company called Westside Resources, Inc. that purports to distribute "air/water syringe tips," which are intended to be used by dentists to provide both air and water jets during dental cleaning procedures.

22.    Westside Resources currently operates the websites *naturestip.com* and *crystaltip.com* which purport to promote air/water syringe tip products called the Natures Tip and Crystal Tip.

23.    Upon information and belief, Westside Resources does not sell any other products other than air/water syringe tips (assuming that it does in fact actually sell those).

24.    Several years ago, Westside Resources was sued by Kerr Corporation, a dental product supplier, for patent infringement with respect to Westside Resources syringe tip products.  The case was dismissed on procedural grounds (it had been re-filed after being voluntarily dismissed twice over apparent confusion as to the identity of the defendant), and the merits were never aired.

25.    Upon information and belief, Defendant either owns, or is affiliated with the owners of, a website called *www.dentistrysdirtylittlesecret.com* that purports to be the website of an advocacy group that suggests that patients should be afraid to go their dentists because dentists use unsanitary air/water syringe tips.  The website fails to indicate any affiliation with Westside Resources, and the accuracy of the "information" on that website is currently being investigated.

### DEFENDANT'S WRONGFUL ACTS

26.    Plaintiff hereby incorporates by reference all of the file histories for the trademark applications discussed herein, which the Court may judicially notice as public records of the USPTO. Plaintiff also incorporates by reference all of the websites identified herein.

27.    On information and belief, as of at least the end of 2014, the domains smileclub.com and smileclub.net were unused "parked" domains.

-5-

COMPLAINT

4825-2342-5899.7

28.     In January 2015, Doug Hudson, Plaintiff's former CEO, attempted to reach the owner of the smileclub.com domain.

29.     On Thursday, February 5, 2015, Mr. Hudson began communicating with Defendant to determine if the owner of the domain name smileclub.com was interested in selling the rights to the domain name.

30.     Upon information and belief, at the time Mr. Hudson first began corresponding with Defendant, Defendant may have been connected to the entity that owned the website at smileclub.com.

31.     Upon information and belief, at the time Mr. Hudson was corresponding with Defendant, the websites at smileclub.com and smileclub.net were not active and did not offer any products for sale.

32.     Upon information and belief, due to Mr. Hudson's inquiry, Defendant saw an opportunity to capitalize on Plaintiff's growing reputation and to extort money from Plaintiff.

33.     On Thursday, February 5, 2015, Defendant claimed that he had spent $8,500 on smileclub.com and smileclub.net, but nonetheless by Friday, February 13, 2015 Defendant was demanding that Mr. Hudson pay a minimum of a six figures, or $100,000 for the inactive domain name smileclub.com.  Defendant further proposed that he and Mr. Hudson speak several days later, on Thursday, February 19, 2015.

34.     On Tuesday, February 17, 2015, Defendant's business partner registered the domains www.smileclubcare and www.smileclubalign, fully aware that, at the time, Plaintiff used the name SmileCareClub.

35.     Upon information and belief, in furtherance of his plan to defraud the USPTO and to attempt to extort money from Plaintiff, Defendant then filed Trademark Application No. 86535108 ("'108 Application") for the "SMILECLUB" mark as an intent-to-use application under 15 U.S.C. § 1051(b).

36.     Plaintiff filed this application at approximately 7:19 EST on Friday, February 13, 2015, eight days after his first contact with Mr. Hudson.

COMPLAINT

4825-2342-5899.7

37.    Defendant, or his attorney on behalf of and at the direction of Defendant, signed the '108 Application. The signature is preceded by the following mandatory declaration:

> The signatory believes that . . . if the applicant filed an application under 15 U.S.C. Section 1051(b), Section 1126(d), and/or Section 1126(e), the applicant is entitled to use the mark in commerce; the applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the goods/services in the application. The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

38.    Upon information and belief, at the time Defendant filed the '108 Application, he did not have a bona fide intent to actually use the Mark in connection with the indicated uses, including "[o]nline retail store services featuring dental, orthodontic and personal care products and services, dental equipment, orthodontic equipment, toothbrush, toothpaste and floss; retail stores services featuring dental,

orthodontic and personal care products and services, dental equipment, orthodontic equipment, toothbrush, toothpaste and floss."

39.   Upon information and belief, Defendant fraudulently filed the '108 Application in the hope of capitalizing off of the business of Plaintiff and extorting payment.

40.   Upon information and belief, Defendant did not have a business plan for the services identified in International Class 35 at the time that he filed its intent-to-use application.

41.   Upon information and belief, at the time of filing, Defendant's only plan was to fraudulently obtain registration of the "SMILECLUB" mark in the hope of selling the mark and related domain names to Plaintiff.

42.   In order to obtain final registration of the mark, Defendant concocted a scheme to create a sham website to submit as a specimen of use and hide his false Statement of Use submitted to the USPTO.

43.   Part of this scheme involved presenting to the USPTO images of webpages from the domain smileclub.xyz.

44.   A ".xyz" domain is a relatively new generic top-level domain type approved by ICAAN, and is no different in practical appearance and accessibility to a user than a ".com".

45.   Smileclub.xyz is a domain that was registered by Defendant (or someone acting on his behalf) in March 2016, *i.e.*, more than a year after the filing of the '108 Application.  Thus, smileclub.xyz webpages did not exist at the time the intent-to-use application was filed on February 13, 2015.

46.   Since registration of the smileclub.xyz domain name, Defendant, or someone on his behalf, has run a sham website where a handful of dental products are purportedly offered for sale.

COMPLAINT

4825-2342-5899.7

47.     On or about September 5, 2017, Defendant filed a Statement of Use with the USPTO.  Specifically, Defendant submitted a series of webpages from smileclub.xyz as a specimen purportedly showing actual use in commerce.

48.     With the specimen, Defendant submitted a declaration in which he averred:

- The specimen(s) shows the mark as used on or in connection with the goods/services/collective membership organization in commerce.

- To the best of the signatory's knowledge and belief, no other persons, except, if applicable, authorized users, members, and/or concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services/collective membership organization of such other persons, to cause confusion or mistake, or to deceive.

- To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

- The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

49.     By signing the declaration, Defendant averred under oath that the specimen showed actual use and the alleged first use date of March 6, 2017, was truthful.

COMPLAINT

4825-2342-5899.7

50.     However, the products featured on the smileclub.xyz website could not actually be purchased at least as of the time that the specimen was submitted to the USPTO.

51.     Upon information and belief, Defendant had not made any sales of any products through the smileclub.xyz website at the time that he made his submissions to the USPTO.

52.     Defendant submitted the specimen in a manner to intentionally conceal from the USPTO that purchases could not actually be made through the smileclub.xyz website.

53.     The specimen submitted by Defendant includes a screen capture of a "Shopping Cart" with two products in the "cart."  It appears that one can purchase the products in the "cart" by completing the form provided on the screen.

54.     The screen capture, however, does not show the apparent methods of payment.

55.     When submitting the specimen, Defendant intentionally neglected to include evidence of what occurred if a user attempted to complete the purchase.

56.     For some time after Defendant submitted the specimen, if a user did "sign in" to view payment options, she would be presented with apparent options to pay by credit card, PayPal, or check.

57.     If one clicked "Pay by check," a message appeared purporting to confirm the purchase of the order and stating that shipping will occur upon receipt of payment.

58.     Neither the message nor any other portion of the website indicated to whom any check should be made payable or where payment should be sent.

59.     Although the message stated that a confirmation email would be sent to the purchaser, upon information and belief, no such emails were actually sent.

60.     If one selected a method of payment other than "Pay by check," the smileclub.xyz website would return the would-be purchaser to the nonfunctional check button.

COMPLAINT

4825-2342-5899.7

61.   Based on the foregoing, the alleged ability to purchase goods from Defendant through smileclub.xyz was, at least at the time that Defendant submitted its specimen, an intentional misrepresentation intended to give the appearance of use in commerce when, in fact, no such use existed.

62.   As of the time of this writing, smileclub.xyz remains a sham website.  It purports to sell a small token handful of random, inexpensive products such as floss and mouthwash, while nonetheless including prominent photos of sophisticated professional medical equipment that it does not purport to sell, *e.g.*, a massive MRI machine.

63.   The handful of products purportedly sold on the smileclub.xyz website are from third party manufacturers like Colgate.  "Smile Club" does not have any of its own branded products.

64.   No contact phone number is provided for the site.

65.   The "for sale" products each have a single, obviously fake "review" by either a "Doug K" or a "Derek K," all (purportedly) dated May 2015, which is almost a year prior to when the site was first registered.  For example, "Doug K" writes about  a "tooth whitening pen" as follows: "*WOW!!! I have no words! It was a unique and very enjoyable experience. You have such a diverse variety of beautiful products of the highest quality plus superb service. I am now a fan of your site! I can't wait to buy from you again! Good wishes!*"  "Doug K" then proceeds to give the product only 3 out of 5 stars.  "Doug K" also gives the verbatim review for a $5.95 "gum brush."

66.   Upon information and belief, to the extent that anyone can even currently purchase any of these token items from the smileclub.xyz site, such products are being offered purely as a part of a sham effort to give the website an *ex post facto* air of legitimacy that it in fact lacks.

67.   During prosecution of the '108 Application, the Trademark Office issued a rejection in light of a third party's U.S. Trademark Registration No. 2475599 for SMILE CLUB (two words) for "dental referral services" ("SMILE_CLUB" mark).

COMPLAINT

4825-2342-5899.7

68.     In May 2016, Defendant procured the SMILE_CLUB registration from its third party owner for the purpose of circumventing the Trademark Office's rejection.

69.     However, Defendant did not have, and still does not have, any bona fide use for this mark as Defendant did not have any legitimate dental referral services under the SMILE_CLUB mark.  Rather than cancel the mark, Defendant made it appear to the Trademark Office that he was now using the mark.

70.     Defendant includes a prominent statement at the smileclub.xyz website claiming that he owns the SMILE_CLUB mark (and SMILECLUB) mark, and that use by others is prohibited.

71.     Also, in May 2016, Defendant separately filed an intent to use trademark application, Serial No. 87041248, for the mark SMILECLUB (one word), seeking registration in other classes ("'248 Application").

72.     This registration application suffers from the same deficiencies as its predecessor in that Defendant has no bona fide use for the mark, despite its representations to the Trademark Office.

73.     No registration has yet issued from the '248 Application.

74.     As of the time of this writing, the website at smileclub.com does not offer any products for sale, and instead borrows word-for-word much of the same content from *www.dentistrysdirtylittlesecret.com*, suggesting that patients should be afraid of going to the dentist for fear of infection.

75.     As with the *www.dentistrysdirtylittlesecret.com* website, smileclub.com fails to indicate any association with Westside Resources, and instead purports to be an independent advocacy organization.

76.     As of the time of this filing, the smileclub.net domain in an inactive site.

COMPLAINT

4825-2342-5899.7

## DEFENDANT IS UNLAWFULLY PREVENTING PLAINTIFF FROM OBTAINING ITS TRADEMARK REGISTRATION

77. On March 3, 2015, Plaintiff filed U.S. Application Serial No. 86551405 (the "'405 Application") for SMILEDIRECTCLUB for use in connection with "orthodontic appliances" in International Class 10 and "orthodontic services" in International Class 44.

78. On June 13, 2015, the USPTO suspended the '405 Application in light of the '108 Application.

79. Then, on October 31, 2017, the USPTO granted Defendant U.S. Registration No. 5,324,184 ("'184 Registration") for the "SMILECLUB" mark, for use in connection with "[o]nline retail store services featuring dental, orthodontic and personal care products and services, dental equipment, orthodontic equipment, toothbrush, toothpaste and floss; retail stores services featuring dental, orthodontic and personal care products and services, dental equipment, orthodontic equipment, toothbrush, toothpaste and floss" in International Class 35; "[i]nsurance services, namely, underwriting, issuance and administration of health and dental insurance; providing insurance information" in International Class 36; and "[p]roviding a website featuring information for patients in the fields of dental health, dentistry and orthodontics; providing a website featuring information for healthcare, dental, dental health and orthodontic professionals in the fields of healthcare, dentistry, dental health and orthodontics; providing information in the fields of dental health, orthodontics, dentistry, dental equipment and orthodontic equipment" in International Class 44.

80. After the "SMILECLUB" registration issued on October 31, 2017, the USPTO issued an office action on December 20, 2017, in which the examiner denied Plaintiff's '405 Application in view of Defendant's "SMILECLUB" registration.

81. The continued presence of the "SMILECLUB" registration on the federal trademark register constitutes an obstacle to Plaintiff's rightful application for registration of the "SMILEDIRECTCLUB" mark. As such, the "SMILECLUB" registration is causing injury and damage to Plaintiff.

COMPLAINT

4825-2342-5899.7

82.     Defendant could, if it chose to, cancel its own registration for "SMILECLUB" and inform the USPTO that Plaintiff's registration should not be hindered.

83.     Defendant has not only refused to do this, but is actively fighting Plaintiff over the matter in the Trademark Office in currently pending proceedings, all as part of an unlawful attempt to extort money from Plaintiff.

84.     Because Plaintiff cannot register its mark, it cannot properly police it.  This not only devalues Plaintiff's brand equity and goodwill, but also invites infringement, dilution, and market confusion.  This is particularly concerning in Plaintiff's business because it implicates consumer safety, and strong brand protection and policing are critical to protect consumers.

85.     Plaintiff's inability to obtain a registration also devalues the company in the eyes of actual and potential investors, and hinders Plaintiff's ability to raise capital.

86.     Plaintiff has now also had to expend significant legal fees and other costs addressing Defendant's misconduct.

## COUNT I

## Violation of 15 U.S.C. § 1120

87.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 86, inclusive, as though fully set forth herein.

88.     As set forth above, Defendant procured the SMILECLUB mark through fraud on the USPTO, and continues to maintain that registration in the absence of any bona fide use of the mark, for the unlawful purpose of attempting to extort Plaintiff.

89.     Because Defendant never had a bona fide intention to use the "SMIILECLUB" mark in commerce, the mark did not meet the requirements of 15 U.S.C. § 1051(b), permitting only registration of marks that the applicant "has a bona fide intention, under circumstances showing the good faith of such person, to use…in commerce."

COMPLAINT

4825-2342-5899.7

90.     As a bona fide intention to use the mark in commerce is an essential part of a trademark registration derived from an intent-to-use application, the USPTO relied on the Defendant's representation as to his intent to use the "SMILECLUB" mark in commerce in granting the registration.

91.     Had the USPTO known that Defendant had no bona fide intention to use the mark in commerce, the registration for the "SMILECLUB" mark would not have issued.

92.     Under 15 U.S.C. § 1051(d)(1), Defendant was required, *inter alia*, to verify that "the mark is in use in commerce" and to specify "the date of the applicant's first use of the mark in commerce" in his Statement of Use.

93.     Defendant knowingly misrepresented that the mark "SMILECLUB" was in use in commerce and had first been used in commerce on March 6, 2017, by submitting the intentionally misleading and materially false smileclub.xyz specimen of use on September 5, 2017.

94.     Defendant knew that he did not have bona fide use of the "SMILECLUB" mark in commerce on September 5, 2017, or any time before or after, but misrepresented to the USPTO that the sham smileclub.xyz website constituted a use of the mark in commerce.

95.     Defendant knew that the items purportedly offered for sale on the smileclub.xyz specimen submitted in support of his Statement of Use could not actually be purchased from the smileclub.xyz website, but misrepresented to the USPTO that they were evidence of Defendant's use of the "SMILECLUB" mark in commerce.

96.     As proof of a mark's use in commerce is an essential part of the trademark application, the USPTO relied on Defendant's representation as to the use of the mark in commerce in granting the registration.

97.     Furthermore, Defendant fraudulently relied on its ownership of the SMILE_CLUB mark, seeking to convey to the USPTO that he was properly using that mark after having purchased it, when in fact Defendant has no bona fide use for the mark.

COMPLAINT

4825-2342-5899.7

98.    Had the USPTO known the truth about Defendant's failure to use the SMILECLUB mark in commerce, the registration for the mark would not have issued.

99.    Defendant intended to deceive the USPTO with his false representations, and acted with intent to unlawfully extort money from Plaintiff.

100.    Defendant has prevented Plaintiff from obtaining registration for its own "SMILEDIRECTCLUB" mark because the USPTO has cited the "SMILECLUB" registration in denying Plaintiff's application to register the "SMILEDIRECTCLUB" mark, and Defendant has nonetheless maintained that registration and is actively fighting Plaintiff over it in currently pending Trademark Office proceedings.

101.    As a result of the USPTO's reliance on Defendant's material misrepresentations, Plaintiff was damaged as set forth above.

102.    Because Defendant's registration was obtained fraudulently, and Plaintiff incurred damages as a result of the fraudulently procured registration, Plaintiff is entitled to recover those damages from Defendant pursuant to 15 U.S.C. § 1120.

## COUNT II

### Cancellation of SMILECLUB Registration

### 15 U.S.C. § 1119

103.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 102, inclusive, as though fully set forth herein.

104.    As set forth above, Defendant employed fraud to register the SMILECLUB mark, first in lacking any bona fide intent to use it upon filing, and then in perpetuating the fraud that he had an actual bona fide use for the mark, when in fact Defendant has only used the mark to attempt to extort Plaintiff.  Such fraud is violative of, *inter alia*, 15 U.S.C.§§ 1051(b) and 1064.

105.    Defendant also still lacks any bona fide use of the SMILECLUB mark, purporting to operate a sham business solely for the sake of furthering his plan to attempt to extort Plaintiff.  Defendant continues to fraudulently claim on the smileclub.xyz

COMPLAINT

website that he has rights to the SMILECLUB mark.   All this conduct is similarly unlawful.

106.   Absent cancellation, Defendant will continue his fraudulent use of the SMILECLUB mark in violation of the law.

107.   Absent cancellation, Defendant will continue to use the SMILECLUB mark to further its unlawful attempt to extort Plaintiff, cause Plaintiff damages (as set forth above), and block Plaintiff's registration of its own marks.

108.   Plaintiff therefore seeks cancellation of the SMILECLUB registration.

**COUNT III**

**Cancellation of SMILE_CLUB Registration**

**15 U.S.C. § 1119**

109.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 102, inclusive, as though fully set forth herein.

110.   Defendant acquired the SMILE_CLUB mark without any bona fide intent to use it, and still lacks any bona fide use for the mark.

111.   Defendant nonetheless presented to the SMILE_CLUB mark to the USPTO in furtherance of its fraudulent representations that he had a bona fide use for the name Smile Club in commerce.

112.   Defendant also continues to fraudulently claim on the smileclub.xyz website that he has rights to the SMILE_CLUB mark.

113.   Absent cancellation, Defendant will continue his fraudulent use of the SMILE_CLUB mark in violation of the law.

114.   Absent cancellation, Defendant will continue to use the SMILE_CLUB mark to further its unlawful attempt to extort Plaintiff, cause Plaintiff damages (as set forth above), and block Plaintiff's registration of its own marks.

115.   Defendant's conduct is violative of at least 15 U.S.C.§ 1064.

116.   Plaintiff therefore seeks cancellation of the SMILE_CLUB registration.

COMPLAINT

4825-2342-5899.7

# COUNT IV

## Violations of California Bus. & Prof. Code, Section 17000 et seq.

117.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 86, inclusive, as though fully set forth herein.

118.   Defendant has violated California Bus. & Prof. Code Section 17000 et seq. ("UCL") by attempting to extort payment from Plaintiff by preventing Plaintiff from being able to register its mark.

119.   Defendant's conduct is improper, and has injured Plaintiff and the consuming public, for several reasons.

120.   First, Defendant has no bona fide interest in the SMILECLUB and SMILE_CLUB marks, and has made unlawful misrepresentations to the USPTO to maintain them.

121.   Second, Defendant's attempt to extort Plaintiff by deliberately blocking Plaintiff's registration is independently unlawful.

122.   Third, by improperly preventing Plaintiff from registering its trade name, Defendant is greatly limiting Plaintiff's ability to police its brand in the marketplace, which causes significant injury to consumers.  Plaintiff is a major company servicing a vast number of customers nationwide.  As with any major brand, unless Plaintiff can effectively police its mark and its services with a federal trademark registration, it is at significantly higher risk of infringement and dilution, all of which will harm the consuming public.  Plaintiff must be particularly careful in policing its mark against infringers in view of the fact that it provides highly technical medical-related services that implicate consumer safety.  By preventing Plaintiff's registration, Defendant is directly and materially increasing the risk not only of consumer confusion, but also consumer injury.

123.   Defendant's conduct has also damaged Plaintiff as has been further set forth herein.

COMPLAINT

4825-2342-5899.7

124.   Defendant is using his various smileclub domains to perpetuate his misconduct by attempting to make it seem ex post facto that he has a legitimate use for the SMILECLUB and SMILE_CLUB marks, when in fact he does not.  There is a clear risk of Defendant using these sham websites to make further fraudulent arguments to the USPTO and to further impede Plaintiff's trademark registrations.   The websites themselves also seek to defraud the public, as set forth herein.

125.   There is likewise also a similar clear risk of Defendant using the '248 Application, if it is granted, to improperly interfere with, harass, and attempt to extort Plaintiff.

126.   In view of the foregoing, Defendant's conduct is violative of the UCL, and Plaintiff hereby requests injunctive relief to (a) cancel Defendant's SMILECLUB and SMILE_CLUB trademark registrations, and/or order Defendant to cancel them himself, (b) order Defendant to permanently withdraw and abandon its '248 Application, (c) order the transfer of the offending domains recited herein to Plaintiff so that Defendant may not use them to further injure and harass Plaintiff, and (d) preclude Defendant from otherwise continuing to assert rights in the SMILECLUB mark, or colorable variants thereof, to the limitation of Plaintiff.

COMPLAINT

4825-2342-5899.7

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, SMILEDIRECTCLUB, LLC, prays for the following relief with respect to its Complaint:

(A)     cancellation of the Defendant's SMILECLUB registration;

(B)     cancellation of the Defendant's SMILE_CLUB registration;

(C)     an order enjoining Defendant from further interfering with Plaintiff's registration of trademarks for its business;

(D)     an order requiring Defendant to permanently withdraw and abandon its '248 Application;

(E)     an order transferring the offending domains to Plaintiff;

(F)     an order precluding Defendant from otherwise continuing to assert rights in the SMILECLUB mark, or colorable variants thereof, to the limitation of Plaintiff;

(G)     damages in an amount to be determined at trial;

(H)     attorney's fees and costs, if allowed; and

(I)     such other and further relief that the Court deems just and proper.

COMPLAINT

4825-2342-5899.7

DATED:  July 13, 2018                **FOLEY & LARDNER LLP**

_____
Jean-Paul Ciardullo
*Attorneys for Plaintiff*
*SmileDirectClub, LLC*

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of any issues so triable by right.

DATED:  July 13, 2018          **FOLEY & LARDNER LLP**

_____

Jean-Paul Ciardullo
*Attorneys for Plaintiff*
*SmileDirectClub, LLC*

COMPLAINT

4825-2342-5899.7