JEAN-PAUL CIARDULLO, CA Bar No. 284170
   jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3500
Los Angeles, CA 90071
Telephone: 213-972-4500
Facsimile: 213-486-0065

CYNTHIA J. RIGSBY (*pro hac vice pending*)
   crigsby@foley.com
**FOLEY & LARDNER LLP**
777 East Wisconsin Avenue
Milwaukee, WI 53202
Telephone: 414-297-5580
Facsimile: 414-297-4900

*Attorneys for Plaintiff*
*SmileDirectClub, LLC*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

|  |  |
|---|---|
| SmileDirectClub, LLC,<br><br>                           *Plaintiff*,<br><br>     *vs*.<br><br>Donovan W. Berkely,<br><br>                           *Defendant*. | Case No. 8:18-cv-01236-JVS-KES<br><br>**FIRST AMENDED COMPLAINT for**<br><br>**(1) Violation of 15 U.S.C. § 1120**<br>**(2) Cancellation of Trademarks under 15. U.S.C. § 1119**<br>**(3) Extortion**<br>**(4) Attempted Extortion**<br>**(5) Violation of Cal. Bus. & Prof. Code Section 17000** *et seq*.<br><br>*Demand for Jury Trial* |

4810-8596-8752.1

SmileDirectClub, LLC ("Plaintiff") hereby complains and alleges as follows against Donovan W. Berkely's ("Defendant"):

## JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over Plaintiff's federal claims arising under the Lanham Trademark Act 15 U.S.C. § 1051 et. seq. (the "Lanham Act") pursuant to 15 U.S.C. §§1119, 1120, and 1121, and 28 U.S.C. §§ 1331, 1338(a). The Court may also invoke jurisdiction under the Declaratory Judgment Act, 28 U.S. Code § 2201, to the extent necessary to resolve live controversies between the parties. The Court has supplemental jurisdiction over the claims arising under laws of the State of California pursuant to 28 U.S.C. § 1367(a) because the State law claims are so related to the federal claims that they form part of the same case or controversy.  The Court independently has jurisdiction over the State law claims pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are diverse, and the harms alleged herein *infra* amount to well over $75,000.

2.     This Court has general personal jurisdiction over Defendant in that, at all times pertinent hereto, upon information and belief, Defendant has been domiciled in this District.  The Court also has specific jurisdiction over Defendant because, upon information and belief, Defendant has directed the acts that harmed Plaintiff from this District, and those acts have caused injury to Plaintiff nationwide, including in this District.

3.     Venue in this District is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district.

## PARTIES

4.     Plaintiff SmileDirectClub, LLC is a Limited Liability Company organized under the laws of the state of Tennessee, with its principal place of business located at 414 Union Street, Suite 800, Nashville, Tennessee 37219.

5.     Defendant Donovan Berkely is an individual who has transacted business in this District and, upon information and belief, resides in this District.  Specifically,

4810-8596-8752.1

USPTO records and other public records list Defendant's address as 6789 Quail Hill Parkway, Irvine, California 92603, and upon information and belief this is Mr. Berkely's current address.

## PLAINTIFF SMILEDIRECTCLUB

6.     Plaintiff is a famous, international, and pioneering direct-to-consumer provider of non-clinical administrative support services to duly licensed dentists and orthodontists trained in sequential aligner therapy.

7.     Plaintiff's brand has become famous and well-recognized throughout the United States, attracting a very large and expanding customer base.

8.     Plaintiff, under the name SmileCareClub, LLC, was formed and registered as a limited liability company with the State of Tennessee on or around July 16, 2014.

9.     Plaintiff operated under the name and trademark SmileCareClub until on or about June 2016 when it formally changed its name to SmileDirectClub, LLC.

10.     Since shortly after its inception, Plaintiff has offered and continues to offer licensed dentists, orthodontists, and dental practices access to its web-based teledentistry platform and a comprehensive package of related non-clinical business and administrative support services that permit those dentists to offer a more affordable option for orthodontic treatment of minor to mild cases of malocclusion with "invisible" corrective sequential aligners.  At the core of SMILEDIRECTCLUB's business model is its innovative web-based teledentistry platform, which is designed around the SmileCheck® system.  The SmileCheck® system is a proprietary system that connects patients with their treating dentist through a web-based portal.  Through the SmileCheck® system, a dentist is able to view images and dental impressions of his or her patients, review and develop treatment plans, prescribe treatment, track the performance of the case through retention, and document communications with patients. Likewise, a patient can access the SmileCheck® system to upload images, view their recommended treatment plan, keep apprised of developments in their treatment, and to communicate with their treating dentist.

4810-8596-8752.1

11.     Commencing at least as early as August 2015, Plaintiff also has used the "SMILEDIRECTCLUB" mark continually nationwide in interstate commerce to identify its teledentistry platform and related dental support organization services, and to distinguish its services and products from the services and products offered by others.

12.     Plaintiff also has established, through continuous, long-term use in commerce common law rights in the use of the phrase "SMILEDIRECTCLUB" as a trade name or part of a trade name.

13.     Plaintiff owns all right, interest, and title to the "SMILEDIRECTCLUB" mark, including all goodwill associated therewith and the right to sue for past, present, and future infringement.

14.     As a result of the long and exclusive use by Plaintiff of its "SMILEDIRECTCLUB" mark, the large sales under the "SMILEDIRECTCLUB" mark, and the large amount of money spent for advertising and promotion of its goods and services, the "SMILEDIRECTCLUB" mark has become famous, and is widely recognized among the general consuming public of the United States as a designation of the source of origin for its services and goods. Plaintiff and its use of the "SMILEDIRECTCLUB" mark are well-known to the public generally.

15.     Plaintiffs fame and popularity have at all relevant times also been known to Defendant.

## DEFENDANT BERKELY

16.     Defendant has no affiliation with Plaintiff, and was unknown to Plaintiff until 2015.

17.     Upon information and belief, Defendant is not a dentist or orthodontist.

18.     Upon information and belief, Defendant either is or was a manager of a paintball business.

19.     Defendant owns several thousand domain names.

20.     Upon information and belief, Defendant seeks to make money by trying to compel legitimate businesses to pay him in exchange for his transfer to them of domain names that he does not legitimately use himself.

21.     Upon information and belief, Defendant has acted as a manager of a Southern California-based company called Westside Resources, Inc. that purports to distribute "air/water syringe tips," which are intended to be used by dentists to provide both air and water jets during dental cleaning procedures.

22.     Westside Resources currently operates the websites *naturestip.com* and *crystaltip.com* which purport to promote air/water syringe tip products called the Natures Tip and Crystal Tip.

23.     Upon information and belief, Westside Resources does not sell any other products other than air/water syringe tips (assuming that it does in fact actually sell those).

24.     Several years ago, Westside Resources was sued by Kerr Corporation, a dental product supplier, for patent infringement with respect to Westside Resources syringe tip products.  The case was dismissed on procedural grounds (it had been re-filed after being voluntarily dismissed twice over apparent confusion as to the identity of the defendant), and the merits were never aired.

25.     Upon information and belief, Defendant either owns, or is affiliated with the owners of, a website called *www.dentistrysdirtylittlesecret.com* that purports to be the website of an advocacy group that suggests that patients should be afraid to go their dentists because dentists use unsanitary air/water syringe tips.   The website fails to indicate any affiliation with Westside Resources, and the accuracy of the "information" on that website is currently being investigated.

26.     Sample images from the smileclub.xyz website are attached within **Exhibit B**.

4810-8596-8752.1

## DEFENDANT'S WRONGFUL ACTS

27.    Plaintiff hereby incorporates by reference all of the file histories for the trademark applications discussed herein, which the Court may judicially notice as public records of the USPTO. Plaintiff also incorporates by reference all of the websites identified herein.

28.    On information and belief, as of at least the end of 2014, the domains smileclub.com and smileclub.net were unused "parked" domains.

29.    In January 2015, Doug Hudson, Plaintiff's former CEO, attempted to reach the owner of the smileclub.com domain.

30.    On Thursday, February 5, 2015, Mr. Hudson began communicating with Defendant to determine if the owner of the domain name smileclub.com was interested in selling the rights to the domain name.

31.    Upon information and belief, at the time Mr. Hudson first began corresponding with Defendant, Defendant may have been connected to the entity that owned the website at smileclub.com.

32.    Upon information and belief, at the time Mr. Hudson was corresponding with Defendant, the websites at smileclub.com and smileclub.net were not active and did not offer any products for sale.

33.    Upon information and belief, due to Mr. Hudson's inquiry, Defendant saw an opportunity to capitalize on Plaintiff's growing reputation and to extort money from Plaintiff.

34.    On Thursday, February 5, 2015, Defendant claimed that he had spent $8,500 on smileclub.com and smileclub.net, but nonetheless by Friday, February 13, 2015 Defendant was demanding that Mr. Hudson pay a minimum of a six figures, or $100,000 for the inactive domain name smileclub.com.  Defendant further proposed that he and Mr. Hudson speak several days later, on Thursday, February 19, 2015.

4810-8596-8752.1

35.   On Tuesday, February 17, 2015, Defendant's business partner registered the domains www.smileclubcare and www.smileclubalign, fully aware that, at the time, Plaintiff used the name SmileCareClub.

36.   Upon information and belief, in furtherance of his plan to defraud the USPTO and to attempt to extort money from Plaintiff, Defendant then filed Trademark Application No. 86535108 ("'108 Application") for the "SMILECLUB" mark as an intent-to-use application under 15 U.S.C. § 1051(b).

37.   Plaintiff filed this application at approximately 7:19 EST on Friday, February 13, 2015, eight days after his first contact with Mr. Hudson.

38.   Defendant, or his attorney on behalf of and at the direction of Defendant, signed the '108 Application. The signature is preceded by the following mandatory declaration:

> The signatory believes that . . . if the applicant filed an application under 15 U.S.C. Section 1051(b), Section 1126(d), and/or Section 1126(e), the applicant is entitled to use the mark in commerce; the applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the goods/services in the application. The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration

4810-8596-8752.1

resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

39.    Upon information and belief, at the time Defendant filed the '108 Application, he did not have a bona fide intent to actually use the Mark in connection with any of the indicated uses for any class of trademark goods or services, including but not limited to "[o]nline retail store services featuring dental, orthodontic and personal care products and services, dental equipment, orthodontic equipment, toothbrush, toothpaste and floss; retail stores services featuring dental, orthodontic and personal care products and services, dental equipment, orthodontic equipment, toothbrush, toothpaste and floss."

40.    Upon information and belief, Defendant fraudulently filed the '108 Application in the hope of capitalizing off of the business of Plaintiff and extorting payment.

41.    Upon information and belief, Defendant did not have a business plan for the services identified in any class of good or service identified at the time that he filed its intent-to-use application, or at any time thereafter.

42.    Upon information and belief, at the time of filing, Defendant's only plan was to fraudulently obtain registration of the "SMILECLUB" mark in the hope of selling the mark and related domain names to Plaintiff.

43.    In furtherance of his scheme to extort Plaintiff, Defendant continued to email Plaintiff in April 2015.  Copies of some of these communications have been attached here as **Exhibit A**.

44.    Defendant's April 2015 emails make several express and implied threats to Plaintiff's business and property interests with the objective of extorting Plaintiff to pay Defendant money.

45.    First, Defendant accused Plaintiff of trademark infringement, warning that "[I will] will let you see how the attorney fees rack up quickly, first discovery, then

4810-8596-8752.1

depositions, then possible dispute over change of venue, then the retainer for at least 100K if you go to court. Then your clients or vendors getting notified of legal suit, they then get served, I had all of this happen, so well aware what will transpire. Lots of things can crash pretty quick until legal is over….".  Defendant also suggested that Plaintiff could "rebrand your company for another 500k."

46.     Defendant's threat of trademark infringement was known to Defendant at the time he made the threat (and now) to be objectively unfounded, at least for the reason that Defendant knew he had no legitimate rights to "Smile Club," and was merely engaging in an extortion scheme.

47.     Second, the statement "your clients or vendors getting notified of legal suit" was a clear threat that Defendant would engage in tortious and defamatory interference with Plaintiff's business partners as part of a sham effort to enforce non-existent trademark rights.

48.     Third, Defendant asserted "just so you know our domain will come with Trademark Registration, as well, that out [*sic*] to save any investor a good amount of cash!"

49.     This statement laid the groundwork for what has become Defendant's continuous and ongoing threat to Plaintiff's legal rights, namely, that Plaintiff intended to obstruct Plaintiff from lawfully obtaining its own trademark registrations because Defendant, through fraud, purported to already own the relevant trademark registrations. Defendant's warning that he can "save [Plaintiff] a good amount of cash" communicated that Plaintiff would otherwise be engaged in a futile attempt to obtain registrations unless Plaintiff capitulated to Defendant's "minimum of six figures" monetary demands.

50.     In order to obtain final registration of the SMILECLUB mark, Defendant concocted a scheme to create a sham website to submit as a specimen of use and hide his false Statement of Use submitted to the USPTO.

51.     Part of this scheme involved presenting to the USPTO images of webpages from the domain smileclub.xyz.

4810-8596-8752.1

52.     A ".xyz" domain is a relatively new generic top-level domain type approved by ICAAN, and is no different in practical appearance and accessibility to a user than a ".com".

53.     Smileclub.xyz is a domain that was registered by Defendant (or someone acting on his behalf) in March 2016, *i.e.*, more than a year after the filing of the '108 Application.   Thus, smileclub.xyz webpages did not exist at the time the intent-to-use application was filed on February 13, 2015.

54.     Since registration of the smileclub.xyz domain name, Defendant, or someone acting on his behalf, has run a sham website where a handful of dental products are purportedly offered for sale.

55.     On or about September 5, 2017, Defendant filed a Statement of Use with the USPTO.   Specifically, Defendant submitted a series of webpages from smileclub.xyz as a specimen purportedly showing actual use in commerce.

56.     With the specimen, Defendant submitted a declaration in which he averred:

- The specimen(s) shows the mark as used on or in connection with the goods/services/collective membership organization in commerce.

- To the best of the signatory's knowledge and belief, no other persons, except, if applicable, authorized users, members, and/or concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services/collective membership organization of such other persons, to cause confusion or mistake, or to deceive.

- To the best of the signatory's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support.

4810-8596-8752.1

- The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

57.    By signing the declaration, Defendant averred under oath that the specimen showed actual use and the alleged first use date of March 6, 2017, was truthful.

58.    However, the products featured on the smileclub.xyz website could not actually be purchased at least as of the time that the specimen was submitted to the USPTO.

59.    Upon information and belief, Defendant had not made any sales of any products through the smileclub.xyz website at the time that he made his submissions to the USPTO.

60.    Defendant submitted the specimen in a manner to intentionally conceal from the USPTO that purchases could not actually be made through the smileclub.xyz website.

61.    The specimen submitted by Defendant includes a screen capture of a "Shopping Cart" with two products in the "cart."  It appears that one can purchase the products in the "cart" by completing the form provided on the screen.

62.    The screen capture, however, does not show the apparent methods of payment.

63.    When submitting the specimen, Defendant intentionally neglected to include evidence of what occurred if a user attempted to complete the purchase.

64.    For some time after Defendant submitted the specimen, if a user did "sign in" to view payment options, she would be presented with apparent options to pay by credit card, PayPal, or check.

4810-8596-8752.1

65.     If one clicked "Pay by check," a message appeared purporting to confirm the purchase of the order and stating that shipping will occur upon receipt of payment.

66.     Neither the message nor any other portion of the website indicated to whom any check should be made payable or where payment should be sent.

67.     Although the message stated that a confirmation email would be sent to the purchaser, upon information and belief, no such emails were actually sent.

68.     If one selected a method of payment other than "Pay by check," the smileclub.xyz website would return the would-be purchaser to the nonfunctional check button.

69.     Based on the foregoing, the alleged ability to purchase goods from Defendant through smileclub.xyz was, at least at the time that Defendant submitted its specimen, an intentional misrepresentation intended to give the appearance of use in commerce when, in fact, no such use existed.

70.     As of the time of this writing, smileclub.xyz remains a sham website.  It purports to sell a small token handful of random, inexpensive products such as floss and mouthwash, while nonetheless including prominent photos of sophisticated professional medical equipment that it does not purport to sell, *e.g.*, a massive MRI machine.

71.     The handful of products purportedly sold on the smileclub.xyz website are from third party manufacturers like Colgate.  "Smile Club" does not have any of its own branded products.

72.     The "for sale" products each have a single, obviously fake "review" by either a "Doug K" or a "Derek K," all (purportedly) dated May 2015, which is almost a year prior to when the site was first registered.  For example, "Doug K" writes about  a "tooth whitening pen" as follows: "*WOW!!! I have no words! It was a unique and very enjoyable experience. You have such a diverse variety of beautiful products of the highest quality plus superb service. I am now a fan of your site! I can't wait to buy from you again! Good wishes!*"  "Doug K" then proceeds to give the product only 3 out of 5 stars. "Doug K" also gives the verbatim review for a $5.95 "gum brush."

4810-8596-8752.1

73.     Sample images from the smileclub.xyz website are attached within **Exhibit B**.

74.     Upon information and belief, to the extent that anyone can even currently purchase any of these token items from the smileclub.xyz site, such products are being offered purely as a part of a sham effort to give the website an *ex post facto* air of legitimacy that it in fact lacks.

75.     During prosecution of the '108 Application, the Trademark Office issued a rejection in light of a third party's U.S. Trademark Registration No. 2475599 for SMILE CLUB (two words) for "dental referral services" ("SMILE_CLUB" mark).

76.     In May 2016, Defendant procured the SMILE_CLUB registration from its third party owner for the purpose of circumventing the Trademark Office's rejection.

77.     However, Defendant did not have, and still does not have, any bona fide use for this mark as Defendant has never had any legitimate dental referral services under the SMILE_CLUB mark.  Rather than cancel or otherwise disclaim the mark, Defendant made it appear to the Trademark Office that he was now actively using the mark.

78.     On May, 16, 2016, Defendant presented the Trademark Office with a purported "Trademark Assignment" for the SMILE_CLUB mark in which he claimed that he was now the owner of "all the associated goodwill of the business to which the [SMILE_CLUB] trademark pertains."

79.     This was a false representation because Defendant in fact owned no goodwill in the SMILE_CLUB mark.  He did not at that time nor at any time thereafter operate any legitimate "dental referral service" under the mark, nor did he ever have any intent to operate such a business.

80.     Upon information and belief, Defendant inherited nothing at all from the assignor of the SMILE_CLUB registration, nor did Defendant otherwise have any knowledge, tools, or information from which he could have continued to operate the assignor's dental referral service, or any other version of that referral service.

4810-8596-8752.1

81.     If Defendant had conceded his non-use of SMILE_CLUB to the Trademark Office, it might have undermined the '108 Application, which was premised on Defendant operating a legitimate "Smile Club" business.  So, Defendant submitted the false statement to the Trademark Office that he had inherited the good will of the original SMILE_CLUB dental referral service in an attempt to defraud the Trademark Office into believing that he had an active and legitimate business, in the hope that this would advance the fraudulent '108 Application.

82.     Defendant has never otherwise disclaimed the SMILE_CLUB mark or conceded his non-use thereof, and instead maintains it and actively claims rights to SMILE_CLUB in the absence of any legitimate use, or intent to use.

83.     Defendant includes a prominent statement at the smileclub.xyz website claiming that he owns the SMILE_CLUB mark (and SMILECLUB) mark, and that use by others is prohibited.

84.     Also, in May 2016, Defendant separately filed an intent to use trademark application, Serial No. 87041248, for the mark SMILECLUB (one word), seeking registration in other classes ("'248 Application").

85.     This registration application suffers from the same deficiencies as its predecessor in that Defendant has no bona fide use for the mark, despite its representations to the Trademark Office.

86.     No registration has yet issued from the '248 Application.

87.     As of the time of this writing, the website at smileclub.com does not offer any products for sale, and instead borrows word-for-word much of the same content from *www.dentistrysdirtylittlesecret.com*, suggesting that patients should be afraid of going to the dentist for fear of infection.

88.     Upon information and belief, Defendant either owns or controls the smileclub.com website.

4810-8596-8752.1

89.     As with the *www.dentistrysdirtylittlesecret.com* website, smileclub.com fails to indicate any association with Westside Resources, and instead purports to be an independent advocacy organization.

90.     As of the time of this filing, the smileclub.net website has the same content (including graphics) as *www.dentistrysdirtylittlesecret.com*.

91.     Upon information and belief, Defendant either owns or controls the smileclub.net website.

92.     Defendant may own or control further "smileclub" variant domains as yet unknown to Plaintiff, but all procured and/or maintained to further extortion of Plaintiff.

93.     Defendant is identified in Nevada Secretary of State records as the current President, Secretary, Treasurer and Director of "SmileClub, Inc."

94.     Upon information and belief, Defendant personally controls all actions purportedly taken by SmileClub, Inc.

95.     Upon information and belief, Smile Club, Inc. is simply a corporate shell that Defendant may use as cover for some or all of his actions complained of herein, and at no relevant time period ever had any legitimate business.

96.     SmileClub, Inc. had been initially registered to an individual named David David DeLoach.

97.     Upon information and belief, Mr. DeLoach is the same David DeLoach who is a former California attorney who is reported on the website for the State Bar of California to have been disbarred following a "conviction."

98.     Nevada Secretary of State records indicate that Mr. DeLoach was the President, Secretary, Treasurer, and Director of Smile Club, Inc. through at least August of 2017, and that Defendant replaced him in those roles on or about January 2018.

99.     The registered agent for Smile Club, Inc. is Corp 95, LLC.

100.    Upon information and belief, Corp 95, LLC is a company operated by Mr. DeLoach.

4810-8596-8752.1

101.   Defendant also identifies the Corp 95, LLC address as his own address in the Nevada Secretary of State records.

102.   The second address listed for SmileClub, Inc. on the Nevada Secretary of State website is the address that Defendant has listed as his own address in Trademark Office filings: 6789 Quail Hill Parkway, # 313 in Irvine, California.

103.   Upon information and belief, the Quail Hill address corresponds to a UPS Store.

104.   The company address identified on the smileclub.xyz website is 7437 S. Eastern Avenue, Suite 305 Las Vegas, Nevada 89123.

105.   Upon information and belief, the 7437 S. Eastern Avenue address corresponds to a UPS Store.

106.   Upon information and belief, Defendant has no other corporate address for his purported "Smile Club" business.

107.   Upon and information and belief, Defendant chooses to use UPS Stores to conduct his affairs as a way of masking his own location while simultaneously allowing him to claim a company address without actually owning or leasing any corporate real estate.

**DEFENDANT IS UNLAWFULLY PREVENTING PLAINTIFF FROM OBTAINING ITS TRADEMARK REGISTRATION**

108.   On March 3, 2015, Plaintiff filed U.S. Application Serial No. 86551405 (the "'405 Application") for SMILEDIRECTCLUB for use in connection with "orthodontic appliances" in International Class 10 and "orthodontic services" in International Class 44.

109.   On June 13, 2015, the USPTO suspended the '405 Application in light of the '108 Application.

110.   Then, on October 31, 2017, the USPTO granted Defendant U.S. Registration No. 5,324,184 ("'184 Registration") for the "SMILECLUB" mark, for use in connection with "[o]nline retail store services featuring dental, orthodontic and personal care

products and services, dental equipment, orthodontic equipment, toothbrush, toothpaste and floss; retail stores services featuring dental, orthodontic and personal care products and services, dental equipment, orthodontic equipment, toothbrush, toothpaste and floss" in International Class 35; "[i]nsurance services, namely, underwriting, issuance and administration of health and dental insurance; providing insurance information" in International Class 36; and "[p]roviding a website featuring information for patients in the fields of dental health, dentistry and orthodontics; providing a website featuring information for healthcare, dental, dental health and orthodontic professionals in the fields of healthcare, dentistry, dental health and orthodontics; providing information in the fields of dental health, orthodontics, dentistry, dental equipment and orthodontic equipment" in International Class 44.

111. After the "SMILECLUB" registration issued on October 31, 2017, the USPTO issued an office action on December 20, 2017, in which the examiner denied Plaintiff's '405 Application in view of Defendant's "SMILECLUB" registration.

112. The continued presence of the "SMILECLUB" registration on the federal trademark register constitutes an obstacle to Plaintiff's rightful application for registration of the "SMILEDIRECTCLUB" mark. As such, the "SMILECLUB" registration is causing injury and damage to Plaintiff.

113. Defendant could, if he chose to, cancel his own registration for "SMILECLUB" and inform the USPTO that Plaintiff's registration should not be hindered.

114. Defendant has not only refused to do this, but is actively fighting Plaintiff over the matter in Trademark Office proceedings, all as part of a continuing unlawful attempt to extort money from Plaintiff.

115. Because Plaintiff cannot register its mark, it cannot properly police it. This not only devalues Plaintiff's brand equity and goodwill, but also invites infringement, dilution, and market confusion. This is particularly concerning in Plaintiff's business because it implicates consumer safety, and strong brand protection and policing are

4810-8596-8752.1

critical to protect consumers.  Injury to consumers will occur, for example, from consumers buying inferior or dangerous products from infringers, or from obtaining false medical information from infringers, all while believing that such materials or information are reliable because they appear to originate with Plaintiff.

116.   Plaintiff's inability to obtain a registration also devalues the company in the eyes of actual and potential investors, and hinders Plaintiff's ability to raise capital.

117.   Plaintiff estimates that it is currently losing significant capital investment due to its inability to register its mark, and these losses will only escalate, making it important that this matter be resolved promptly.

118.   Plaintiff has now also had to expend significant legal fees and other costs addressing Defendant's misconduct.

119.   Defendant's clear intent – both expressly stated and continually implied – is to extort Plaintiff.  Defendant has never had any legitimate use for his registrations, or the smileclub domains, and maintains them as part of an ongoing scheme to force Plaintiff to pay him money.

## CLAIM I
### Violation of 15 U.S.C. § 1120

120.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

121.   As set forth above, Defendant procured the SMILECLUB mark through fraud on the USPTO, and continues to maintain that registration in the absence of any bona fide use of the mark, for the unlawful purpose of attempting to extort Plaintiff.

122.   Because Defendant never had a bona fide intention to use the "SMIILECLUB" mark in commerce, the mark did not meet the requirements of 15 U.S.C. § 1051(b), permitting only registration of marks that the applicant "has a bona fide intention, under circumstances showing the good faith of such person, to use…in commerce."

4810-8596-8752.1

123.   As a bona fide intention to use the mark in commerce is an essential part of a trademark registration derived from an intent-to-use application, the USPTO relied on the Defendant's representation as to his intent to use the "SMILECLUB" mark in commerce in granting the registration.

124.   Had the USPTO known that Defendant had no bona fide intention to use the mark in commerce, the registration for the "SMILECLUB" mark would not have issued.

125.   Under 15 U.S.C. § 1051(d)(1), Defendant was required, *inter alia*, to verify that "the mark is in use in commerce" and to specify "the date of the applicant's first use of the mark in commerce" in his Statement of Use.

126.   Defendant knowingly misrepresented that the mark "SMILECLUB" was in use in commerce and had first been used in commerce on March 6, 2017, by, *inter alia*, submitting the intentionally misleading and materially false smileclub.xyz specimen of use on September 5, 2017.

127.   Defendant knew that he did not have bona fide use of the "SMILECLUB" mark in commerce on September 5, 2017, or any time before or after, but misrepresented to the USPTO that the sham smileclub.xyz website constituted a use of the mark in commerce.

128.   Defendant knew that the items purportedly offered for sale on the smileclub.xyz specimen submitted in support of his Statement of Use could not actually be purchased from the smileclub.xyz website, but misrepresented to the USPTO that they were evidence of Defendant's use of the "SMILECLUB" mark in commerce.

129.   As proof of a mark's use in commerce is an essential part of the trademark application, the USPTO relied on Defendant's representation as to the use of the mark in commerce in granting the registration.

130.   Defendant further defrauded the Trademark Office by claiming to have been validly assigned the SMILE_CLUB registration, along with all of its "good will."

131.   Defendant's purported assignment of the SMILE_CLUB mark was void under the anti-assignment in gross doctrine because Defendant did not in fact inherit or

possess an means by which to continue the good will of the business, if it had any at the time of the purported transfer.  Thus, the most that Defendant's payment to the assignor could have accomplished was an abandonment of the SMILE_CLUB mark.

132.   Defendant nonetheless told the Trademark Office that he has been assigned all good will in the SMILE_CLUB mark to fraudulently perpetuate the fiction that Defendant actually owned and operated a legitimate "Smile Club" business. Defendant engaged in this fraud to help procure the SMILECLUB registration.

133.   Defendant has fraudulently continued to maintain the SMILE_CLUB mark as set forth above, and to otherwise claim valid ownership of it to the public.

134.   Had the USPTO known the truth about Defendant's failure to use the SMILECLUB mark in commerce, the registration for the mark would not have issued.

135.   Defendant intended to deceive the USPTO with his various false representations, and acted with intent to unlawfully extort money from Plaintiff.

136.   Defendant has prevented Plaintiff from obtaining registration for its own "SMILEDIRECTCLUB" mark because the USPTO has cited the "SMILECLUB" registration in denying Plaintiff's application to register the "SMILEDIRECTCLUB" mark, and Defendant has nonetheless maintained that registration and is fighting Plaintiff over it in pending Trademark Office proceedings.

137.   As a result of the USPTO's reliance on Defendant's material misrepresentations, Plaintiff has been – and still is being – damaged as set forth above.

138.   Because Plaintiff's damages are escalating with time, it is important that this matter be resolved promptly and decisively, and that Plaintiff obtain compensation for the harms Defendant has caused it.

139.   Because Defendant's registration was obtained fraudulently, and Plaintiff incurred damages as a result of the fraudulently procured registration, Plaintiff is entitled to recover those damages from Defendant pursuant to 15 U.S.C. § 1120.

140.   To the extent Defendant were to purport to have limited liability as to any claims herein on account of the existence of SmileClub, Inc., Defendant would

nonetheless be personally liable because (1) he has personally directed and controlled the torts complained of herein, and (2) Defendant has alter ego liability for SmileClub, Inc. on account of using the purported business to perpetuate fraud and other intentional torts.

141.   To the extent that Plaintiff's two causes of action under 15 U.S.C. § 1119 may otherwise be deemed part of Plaintiff's cause of action under 15 U.S.C. § 1120, Plaintiff incorporates them here by reference.

**CLAIM II**

**Cancellation of SMILECLUB Registration**

**15 U.S.C. § 1119**

142.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

143.   As set forth above, Defendant employed multiple acts of fraud to register the SMILECLUB mark, first in lacking any bona fide intent to use it upon filing, and then in perpetuating the fraud that he had an actual bona fide use for the mark, when in fact Defendant has only used the mark to attempt to extort Plaintiff.  Such fraud is violative of, *inter alia*, 15 U.S.C.§§ 1051(b) and 1064.

144.   Defendant also still lacks any bona fide use of the SMILECLUB mark, purporting to operate a sham business solely for the sake of furthering his plan to attempt to extort Plaintiff.  Defendant continues to fraudulently claim on the smileclub.xyz website that he has rights to the SMILECLUB mark.  All this conduct is similarly unlawful.

145.   Absent cancellation, Defendant will continue his fraudulent use of the SMILECLUB mark in violation of the law.

146.   Absent cancellation, Defendant will continue to use the SMILECLUB mark to further its unlawful attempt to extort Plaintiff, cause Plaintiff damages (as set forth above), and block Plaintiff's registration of its own marks.

147.   Plaintiff therefore seeks cancellation of the SMILECLUB registration.

FIRST AMENDED COMPLAINT
CASE NO. 8:18-cv-01236-JVS-KES

4810-8596-8752.1

# CLAIM III

## Cancellation of SMILE_CLUB Registration

### 15 U.S.C. § 1119

148.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

149.   Defendant purported to acquire the SMILE_CLUB mark, despite lacking any bona fide intent to use it.

150.   Defendant's purported assignment of the SMILE_CLUB mark was void under the anti-assignment in gross doctrine because Defendant did not in fact inherit or possess an means by which to continue the good will of the business, if it had any at the time of the purported transfer.  Thus, the most that Defendant's payment to the assignor could have accomplished was an abandonment of the SMILE_CLUB mark.

151.   Defendant nonetheless told the Trademark Office that he has been assigned all good will in the SMILE_CLUB mark to fraudulently perpetuate the fiction that Defendant actually owned and operated a legitimate "Smile Club" business. Defendant engaged in this fraud to help procure the SMILECLUB registration.

152.   Defendant still unlawfully claims rights in the SMILE_CLUB mark in the absence of any valid use or intent to use.

153.   For example, Defendant continues to fraudulently claim on the smileclub.xyz website that he has rights to the SMILE_CLUB mark.

154.   Regardless of whether Defendant could be said to have had acquired any rights in the SMILE_CLUB mark from the assignor at the time of the purported assignment, he has abandoned any such rights by now in view of lack of any bona fide use, or intent to use.

155.   Absent cancellation, Defendant will continue his fraudulent use of the SMILE_CLUB mark in violation of the law.

4810-8596-8752.1

156.   Absent cancellation, Defendant will continue to use the SMILE_CLUB mark to further its unlawful attempt to extort Plaintiff, cause Plaintiff damages (as set forth above), and block Plaintiff's registration of its own marks.

157.   Defendant's conduct is violative of at least 15 U.S.C.§ 1064.

158.   Plaintiff therefore seeks cancellation of the SMILE_CLUB registration.

## COUNT IV

### Civil Extortion – California State Law

159.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

160.   Defendant is liable for civil extortion under California State Law for having expressly and implicitly (a) threatened to block (and continue to block) Plaintiff's lawful registration of it trademark to which Plaintiff is entitled and that Plaintiff would have been granted but for Defendant's wrongful interference and unlawful fraud on the Trademark Office; (b) threatened to sue Plaintiff for trademark infringement despite Defendant's knowledge that such a claim would be baseless; (c) threatening to tortuously interfere with Plaintiff's business partners; and (d) otherwise threatened to improperly interfere with Plaintiff's business operations; all unless Plaintiff capitulated to Defendant's demands for an exorbitant sum of money.

161.   At no time has Defendant ever had a lawful right to his purported trademarks, nor has he ever had valid grounds to assert trademark infringement in the absence of any valid trademark rights.

162.   Defendant has at all times known that his demands for money are baseless, but has continued his ongoing acts of extortion unabated.  These acts began in 2015 with overt written threats and demands, and have continued as Defendant has made good on his threats by actively blocking Plaintiff's trademark registration, and maintaining a cloud of the false claim of "infringement" over Plaintiff.  Defendant could at any time cease his unlawful and fraudulent activities, withdraw his fraudulent trademark registration, and

allow Plaintiff to obtain its rightful registration and otherwise proceed unmolested. Instead, Defendant has continued to make good on his promised interference while waiting for Plaintiff to pay him an exorbitant sum of money.

163.   Defendant's ongoing acts of extortion have damaged Plaintiff as described in Paragraphs 115-118 above.

164.   Plaintiff seeks recovery for its losses caused by Defendant's ongoing extortion.

165.   Furthermore, Defendant's acts of extortion have been pursued intentionally, willfully, and with malice, justifying an award of attorneys' fees and punitive damages to discourage any such further conduct by Defendant, or by others who may have similar extortion plans.

166.   To the extent Defendant were to purport to have limited liability as to any claims herein on account of the existence of SmileClub, Inc., Defendant would nonetheless be personally liable because (1) he has personally directed and controlled the torts complained of herein, and (2) Defendant has alter ego liability for SmileClub, Inc. on account of using the purported business to perpetuate fraud and other intentional torts.

## COUNT V

### Attempted Civil Extortion – California State Law

167.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

168.   In the alternative to civil extortion, Defendant has minimally engaged in attempted civil extortion under California State Law by engaging in the acts complained of in Count IV.

169.   Defendant's ongoing acts of extortion have damaged Plaintiff as described in Paragraphs 115-118 above.

170.   Plaintiff seeks recovery for its losses caused by Defendant's ongoing extortion.

4810-8596-8752.1

171.   Furthermore, Defendant's acts of extortion have been pursued intentionally, willfully, and with malice, justifying an award of attorneys' fees and punitive damages to Plaintiff to discourage any such further conduct by Defendant, or by others who may have similar extortion plans.

172.   To the extent Defendant were to purport to have limited liability as to any claims herein on account of the existence of SmileClub, Inc., Defendant would nonetheless be personally liable because (1) he has personally directed and controlled the torts complained of herein, and (2) Defendant has alter ego liability for SmileClub, Inc. on account of using the purported business to perpetuate fraud and other intentional torts.

## COUNT VI

### Violations of California Bus. & Prof. Code, Section 17000 et seq.

173.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs as though fully set forth herein.

174.   Defendant has violated California Bus. & Prof. Code Section 17000 et seq. ("UCL") by attempting to extort payment from Plaintiff by preventing Plaintiff from being able to register its mark.

175.   Even if Defendant's conduct were not found to amount to extortion under California State Law, the UCL creates a remedy to prevent Plaintiff from suffering further harm due to Defendant's improper conduct.

176.   Defendant's conduct is improper, and has injured Plaintiff and the consuming public, for several reasons.

177.   First, Defendant has no bona fide interest in the SMILECLUB and SMILE_CLUB marks, and has made unlawful misrepresentations to the USPTO to maintain them.

178.   Second, Defendant's attempt to force Plaintiff to pay outrageous sums of money by deliberately blocking Plaintiff's registration is independently unlawful.

4810-8596-8752.1

179.   Third, Defendant's baseless infringement threats and threats to tortuously interfere with Plaintiff's business partners are independently unlawful.

180.   Fourth, by improperly preventing Plaintiff from registering its trade name, Defendant is greatly limiting Plaintiff's ability to police its brand in the marketplace, which causes significant injury to consumers.  Plaintiff is a major company servicing a vast number of customers nationwide.  As with any major brand, unless Plaintiff can effectively police its mark and its services with a federal trademark registration, it is at significantly higher risk of infringement and dilution, all of which will harm the consuming public.  Plaintiff must be particularly careful in policing its mark against infringers in view of the fact that it provides highly technical medical-related services that implicate consumer safety.  By preventing Plaintiff's registration, Defendant is directly and materially increasing the risk not only of consumer confusion, but also consumer injury.  Such injury will occur, for example, from consumers buying inferior or dangerous products from infringers, or from obtaining false medical information from infringers, all while believing that such materials or information are reliable because they appear to originate with Plaintiff.

181.   Defendant's conduct has also damaged Plaintiff as has been further set forth elsewhere herein, including Paragraphs 115-118.

182.   Defendant is using his various smileclub domains to perpetuate his misconduct by attempting to make it seem *ex post facto* that he has a legitimate use for the SMILECLUB and SMILE_CLUB marks, when in fact he does not.  There is a clear risk of Defendant using these sham websites to make further fraudulent arguments to the USPTO and to further impede Plaintiff's trademark registrations. The websites themselves also seek to defraud the public, as set forth herein.

183.   There is likewise also a similar clear risk of Defendant using the '248 Application, if it is granted, to improperly interfere with, harass, and attempt to extort Plaintiff.

4810-8596-8752.1

184.  In view of the foregoing, Defendant's conduct is violative of the UCL, and Plaintiff hereby requests injunctive relief to (a) cancel Defendant's SMILECLUB and SMILE_CLUB trademark registrations, and/or order Defendant to cancel them himself, (b) order Defendant to permanently withdraw and abandon his '248 Application, (c) order the transfer of the offending domains recited herein to Plaintiff so that Defendant may not use them to further injure and harass Plaintiff, and (d) preclude Defendant from otherwise continuing to assert rights in the SMILECLUB mark, or colorable variants thereof, to the limitation of Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, SMILEDIRECTCLUB, LLC, prays for the following relief with respect to its Complaint:

(A)    cancellation of the Defendant's SMILECLUB registration;

(B)    cancellation of the Defendant's SMILE_CLUB registration;

(C)    an order enjoining Defendant from further interfering with Plaintiff's registration of trademarks for its business;

(D)    an order requiring Defendant to permanently withdraw and abandon its '248 Application;

(E)    an order transferring the offending domains to Plaintiff;

(F)    an order precluding Defendant from otherwise continuing to assert rights in the SMILECLUB mark, or colorable variants thereof, to the limitation of Plaintiff;

(G)    damages in an amount to be determined at trial;

(H)    attorney's fees and costs;

(I)    punitive damages; and

(J)    such other and further relief that the Court deems just and proper.

4810-8596-8752.1

DATED:  August 14, 2018          **FOLEY & LARDNER LLP**

_____
Jean-Paul Ciardullo
*Attorneys for Plaintiff*
*SmileDirectClub, LLC*

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury of any issues so triable by right.

DATED:  August 14, 2018          **FOLEY & LARDNER LLP**


_____

Jean-Paul Ciardullo
*Attorneys for Plaintiff*
*SmileDirectClub, LLC*